NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 15 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GRISELDA BRAMBILA,

Plaintiff - Appellant,

v.

FRANK BISIGNANO, Commissioner of
Social Security,

Defendant - Appellee.

No. 25-1989

D.C. No.
1:23-cv-03124-LRS

MEMORANDUM*

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted April 24, 2026
Seattle, Washington

Before: W. FLETCHER and KOH, Circuit Judges, and RAYES, District Judge.**

Griselda Brambila appeals from the district court's order affirming an

Administrative Law Judge's (ALJ) denial of her application for supplemental

security income under Title XVI of the Social Security Act. We have jurisdiction

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Douglas L. Rayes, United States District Judge for the
District of Arizona, sitting by designation.

under 28 U.S.C. § 1291. We reverse the district court's decision and remand with instructions to remand to the ALJ for the calculation and award of benefits.

"The [ALJ's] disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the whole record. *Id.*

Brambila contends that the ALJ erred in evaluating various medical source opinions and assessing the limiting effects of her impairments, including her migraines and psychogenic non-epileptic seizures (PNES). We conclude that the ALJ materially erred in assessing Brambila's migraines and PNES, and that these errors alone warrant remanding for the calculation and award of benefits. We therefore do not reach Brambila's other arguments.

1. The ALJ improperly discounted Brambila's allegations concerning the frequency and severity of her migraines. Proper evaluation of a claimant's symptom allegations requires the ALJ to perform a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks and citations omitted). If the

claimant presents such evidence "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (internal quotation marks and citations omitted).

In response to a September 2018 questionnaire, Brambila reported that she began experiencing migraines following a car accident in 2007. These migraines caused nausea, vision changes, throbbing pain, and sensitivity to light and sound. She reported that they occurred about fourteen times per month without medication, but only two to four times per month with medication, although even with medication they would last two to four days each. During her first administrative hearing in June 2020, Brambila testified that she would have "maybe one [migraine] a month" with medication. During her second administrative hearing in March 2023, Brambila testified that, when taking topiramate, she experienced about two migraines per month lasting at least two days each.

The ALJ found that Brambila's medically determinable impairments could reasonably be expected to cause her symptoms and did not find Brambila malingered. But the ALJ found Brambila's migraines were not as limiting as she claimed because of three perceived "inconsistencies in the record."

First, the ALJ observed that Brambila worked during the time she reported experiencing migraines, suggesting they are not as limiting as she describes. This reason lacks substantial evidentiary support. Brambila's earning records reflect little to no income during this period. That Brambila could perform some sporadic, insubstantial work during this time does not undermine her testimony.

Next, the ALJ noted that Brambila alleges her migraines cause memory problems, but no memory problems are documented in the medical record. Although the ALJ provided a sufficiently supported reason for discounting Brambila's claim that her migraines caused memory issues, this reason does not justify discounting Brambila's testimony that her migraines occurred up to twice a month and lasted at least two days at a time.

Finally, the ALJ remarked that the treating records "do not document migraines, or headaches, of the frequency [Brambila] has described." But the ALJ did not support this finding with substantial evidence in the record. Instead, the ALJ isolated two pages of the record to support her conclusion: treatment notes from Brambila's visits with her treating neurologist on June 9, 2020, and January 3, 2023, both of which state under the "History of Patient Illness" section that Brambila was taking topiramate in August 2018, which helped reduce her headaches to one or two per month of short duration. The ALJ, however, did not

account for considerable evidence supporting Brambila's allegations concerning the frequency and duration of her migraines.

For example, when Brambila began seeing her treating neurologist in November 2017, she reported experiencing migraines more than fifteen days per month, with each migraine lasting two to four days. In August 2018, records show topiramate helped reduce her migraines to one or two mild headaches per month. The following month, however, Brambila reported that, even with medication, her migraines were occurring two to four times per month, each lasting for two to four days. In May 2019, progress notes indicate Brambila was experiencing four migraines per month even with topiramate, and that she was unhappy with the side effects of the medication. She had two migraines per month in November 2019, roughly one per month in 2020 and 2021, and up to two a month in 2022 and 2023. The totality of the record therefore paints a picture consistent with the thrust of Brambila's testimony: her migraines worsened significantly in 2017; at times topiramate helped reduce their frequency to once or twice per month; but even with the medication, those monthly migraines could last for at least a day.

The ALJ's error in assessing Brambila's testimony concerning the frequency and duration of her migraines was not harmless because a vocational expert testified that the "accepted norm within unskilled work" is no more than one missed day per month and no more than ten percent of the workday off-task.

Someone experiencing severe migraines as often as Brambila claims would be unable to sustain a full-time unskilled job.

2. The ALJ did not properly evaluate Brambila's PNES.[1] The ALJ found that Brambila has a severe non-epileptic, pseudo-seizure disorder. The record shows that the frequency of these episodes varies. In January 2020, Brambila reported having four episodes in a single week. From February 2020 through June

---

[1] At Step 3, the ALJ erroneously stated that "there is no specific listing for pseudo-seizures" and instead considered whether Brambila's symptoms equaled the criteria for the epilepsy listing, 11.02. Listing 11, however, states that "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02" and "[w]e evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00." 20 C.F.R. § 404, Subpt. P, App. 1, 11.00(H)(1). The relevant Listing in 12 is 12.07, and the ALJ never considered whether Brambila's PNES meets those criteria.

Brambila, however, forfeited this argument by not raising it. *See Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025). At any rate, the error was harmless because it "was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Listing 12.07 requires Brambila to have one "extreme limitation" or two "marked limitations" in the "Paragraph B" criteria. 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(A)(2)(b). Those Paragraph B criteria are identical in the Listings for Depressive & Bipolar Disorder, 12.04; Anxiety, 12.06; Personality Disorder, 12.08; and Trauma and Stressor related disorders, 12.15. *Id.* At Step 3, the ALJ considered the Paragraph B criteria for all four of these Listings and found that Brambila had only a "moderate limitation" in all four of the Paragraph B criteria, which Brambila does not challenge. Thus, the ALJ's failure to consider the proper Listing was harmless because the ALJ necessarily found that Brambila could not meet 12.07's Paragraph B criteria.

25-1989

2020, she reported having multiple episodes per day. Records from July 2020, March 2021, and January 2023 indicate that Brambila experienced multiple episodes per week. Progress notes from August 2020 describe five different seizure types: (1) minute-long episodes causing breathing difficulties, shaking, and stuttering, (2) "[e]pisodes of altered awareness with staring spells, being unresponsive," (3) "[c]onvulsive episodes" occurring weekly, lasting for up to fifteen minutes each, (4) episodes causing a "spinning sensation" and "blurry vision," and (5) episodes causing "[i]ntermittent shaking" that can last for a few minutes and leave her stuttering, weak, confused, and aggressive.

The ALJ did not consider how these episodes affect Brambila's ability to work. Instead, the ALJ merely described Brambila's medical diagnosis—a non-epileptic, psychogenic disorder unresponsive to epilepsy medications—without evaluating whether and, if so, to what extent these episodes impact Brambila's residual functional capacity.

Aside from describing Brambila's diagnosis, the ALJ also remarked that Brambila's episodes did not cause loss of consciousness, "just stutters." But this description ignores the other reported effects of Brambila's episodes, including shaking, blurring vision, breathing difficulties, and unresponsiveness.

The ALJ's failure to consider the effects of Brambila's PNES is not harmless because a vocational expert opined that someone performing unskilled

25-1989

work would be expected to be off task no more than ten percent of the workday. If the evidence concerning the frequency, duration, and effects of Brambila's PNES episodes were credited, it is hard to see how she could sustain full-time work.

3. Remand for the calculation and award of benefits is appropriate. Though ordinarily the remedy for a defective nondisability determination is to remand for further proceedings, "in appropriate circumstances courts are free to reverse and remand a determination . . . with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019. Under our credit-as-true rule, we may remand for a calculation of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence at issue, (2) the record has been fully developed and further administrative proceedings would not be useful, and (3) the ALJ would have to find the claimant disabled if the improperly discredited evidence were credited. *Id.* at 1020. This rule "is designed to achieve fairness and efficiency[.]" *Id.* at 1019.

The ALJ did not provide sufficient reasons for discounting Brambila's allegations concerning her migraines, nor did the ALJ properly consider Brambila's PNES. After two separate administrative hearings, we find the record is fully developed and that further administrative proceedings are unnecessary. *See id.* at 1021 ("[T]he objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a useful purpose[.]" (internal quotation marks and citations omitted)).

Had the ALJ credited Brambila's allegations concerning the frequency, duration, and effects of her migraines and accounted for her PNES, the ALJ would have had to find Brambila disabled because the combined effects of these conditions would prevent her from maintaining a full-time job due to absenteeism and/or being off task too much. We therefore reverse the judgment of the district court with instructions to remand to the ALJ for the calculation and award of benefits.

**REVERSED AND REMANDED.**